# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JOSE RODRIGUEZ,**

    **Plaintiff,**

  v.                                       **Case No.: 2:14-cv-173**
                                             **JUDGE SMITH**
**DEPARTMENT OF JUSTICE,**                  **Magistrate Judge King**
**DRUG ENFORCEMENT**
**ADMINISTRATION,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court upon the cross-motions for summary judgment by Plaintiff, Jose Rodriguez ("Plaintiff"), and Defendant, the Department of Justice, Drug Enforcement Administration ("DEA"). The DEA moved for summary judgment as to all of Plaintiff's claims (Doc. 12). Plaintiff responded to the DEA's motion with a Cross-Motion for Summary Judgment (Doc. 16). The DEA replied in support of its motion (Doc. 18) and responded to Plaintiff's motion (Doc. 19). Additionally, Plaintiff replied in support of his motion (Doc. 20). For the following reasons, the DEA's motion is **GRANTED** and Plaintiff's motion is **DENIED**.

### I.  BACKGROUND

This dispute concerns Freedom of Information Act ("FOIA") requests made by Plaintiff to the DEA following Plaintiff's arrest and subsequent conviction on drug trafficking charges in Wood County, Ohio. *See State v. Rodriguez*, 6th Dist. Wood No. WD-08-013, 2009-Ohio-4280.

Due to the nature of Plaintiff's FOIA request, a review of both the facts underlying Plaintiff's conviction and the subject case are necessary.

### A. Plaintiff's Underlying Criminal Conviction and Initial Requests for Exhibits N-3 and N-4

Plaintiff was arrested on June 1, 2007 by the Wood County Sherriff's Office for possession of marijuana and trafficking in marijuana. (*See* Doc. 16, Ex. A, Report of Investigation at 130-133). Two audio/video recordings were made the night of Plaintiff's arrest, Exhibit N-3 taken by the "Beowulf" recorder, and Exhibit N-4 taken by the "Falcon" recorder. (*Id.* at 131). Plaintiff has limited his FOIA requests to copies of Exhibit N-3 and Exhibit N-4.

Exhibit N-3 is an audio and/or video recording made by the Beowulf recorder placed on Saul Ramirez, a confidential source. (*Id.*). Exhibit N-4 is an audio and/or video recording made by the Falcon recorder fitted to Mark Apple, an Investigator with the Ohio Attorney General's Office. (*Id.*). Both recordings were turned on at approximately 12:47 a.m. on June 1, 2007. (*Id.*). The recordings capture the conversations that Apple and Ramirez had with Luis Melendez, as well as other events and conversations on June 1, 2007. (*Id.*). Melendez is an acquaintance of Plaintiff who offered to sell 80 pounds of marijuana to Investigator Apple. (*Id.*).

According to the Investigation Report provided by Plaintiff, during the meeting between Apple, Ramirez, and Melendez, Plaintiff stayed in the vicinity of Apple, Ramirez, and Melendez although there is no indication he was involved in the conversation. (*Id.*). At the conclusion of the meeting, Plaintiff approached the confidential source and Apple, and told Apple, "let's get going, because there are a lot of cops in the area." (*Id.* at 132). Plaintiff was pulled over shortly after the conversation between Investigator Apple and Melendez. (*Id.* at 133). Plaintiff, Melendez, and a passenger in Melendez's car, Kyle Tolka, were all arrested for marijuana possession and trafficking. (*Id.*). At 1:25 a.m., the recorders were turned off. (*Id.*).

2

Plaintiff attempted to suppress the evidence obtained during the traffic stop at the trial court, but the court denied his motion. *Rodriguez,* 2009-Ohio-4280 at ¶ 5. At trial, five witnesses testified against Plaintiff: 1) Investigator Apple; 2) Mike Ackley, a Wood County Sherriff's Deputy; 3) Ramirez; 3) Melendez; and 4) Tolka. *Id.* at ¶ 16. In addition to the witness testimony, Plaintiff alleges Exhibit N-4 was played at his trial. He does not claim Exhibit N-3 was played at his trial.

Plaintiff appealed his original conviction, asserting that his original stop, search, and arrest were unlawful, and that the trial court improperly denied his motion for acquittal. *Rodriguez,* 2009-Ohio-4280 at ¶¶ 2–4. The court of appeals upheld his conviction, finding that there was probable cause for the original stop of Plaintiff's vehicle and that there was sufficient evidence presented at his trial to affirm his conviction. *Id.* at ¶¶ 10, 25, and 26.

In May 2010, after his unsuccessful appeal of his conviction, Plaintiff first sought Exhibits N-3 and N-4 from the state agencies involved in his arrest, the Ohio Bureau of Criminal Investigations and Identifications ("BCI&I"), the Wood County Sheriff's Office, and the Wood County Clerk of Courts Office. BCI&I refused to release any records to Plaintiff. The Wood County Sheriff's Office provided a supplemental police report and statements compiled by the police, but refused to provide the recordings to Plaintiff. According to Plaintiff, the Wood County Clerk of Courts provided a copy of Exhibit N-4 to Plaintiff on May 27, 2010. Plaintiff argues the version provided to him is the version introduced at his trial and that it ends twelve minutes prior to when the Investigative Report states the recorders were turned off. Thus, he alleges Exhibit N-4 was altered or had portions deleted prior to its introduction at trial.

Plaintiff appealed his administrative denials on July 21, 2010, in the Wood County Court of Common Pleas. *State v. Rodriguez*, 6th Dist. Wood No. WD-10-062, 2011-Ohio-1397. After

the trial court denied his request, Plaintiff appealed the trial court decision to the Sixth District Court of Appeals.  *Id.*  The court affirmed the trial court decision, finding the information sought was not material to any pending proceeding under Ohio Revised Code § 149.43(B)(8).  *Id.* at ¶ 8.  The court noted that Plaintiff had already exhausted his direct appeal and the evidence against Plaintiff in his criminal case "was overwhelming."  *Id.*

Plaintiff also filed an action under 42 U.S.C. § 1983 against certain key players in his arrest and subsequent conviction in the Northern District of Ohio.  *Rodriguez v. Apple*, No. 3:11 CV 1108, 2011 WL 3843874, at *1 (N.D. Ohio Aug. 30, 2011).  The Court dismissed Plaintiff's Complaint because his claim was a collateral attack on his conviction and he had no injury "distinct of being convicted and imprisoned."  *Id.* at *3.

### B.  History of the Subject FOIA Requests

Plaintiff now seeks Exhibits N-3 and N-4 from the DEA.  On February 22, 2012, Plaintiff submitted an FOIA request to the DEA for "[a]ll audio and/or video recordings related to Jose Rodriguez (D.O.B. xx-xx-1963) taken in Wood County Ohio in May/June 2007."  (*See* Doc. 12, Ex. A, Myrick Decl. at ¶ 5; Doc. 12, Ex. A-A, Allen Letter to DEA).  Katherine Myrick, Chief of the FOIA and Privacy Unit and FOIA ("SARF")[1] and Records Management Section exchanged detailed communication with Plaintiff's counsel, Eric Allen regarding the requests.  (*See* Doc. 12, Ex. A-C, Myrick Letter to Allen #2).  SARF is an office of the DEA "responsible for the receipt, processing and release of DEA information requested," under the FOIA.  (*See* Doc. 12, Ex. A, Myrick Decl. at ¶ 1).

A SARF FOIA Specialist conducted a search in the DEA database using Plaintiff's name and date of birth.  (*See* Doc. 12, Ex. A, Myrick Decl. at ¶ 19).  The search returned one

---

[1] The Court uses the abbreviation provided to it by the DEA to maintain continuity.

4

investigative case file which the SARF investigator then requested from the DEA field office. (*Id.*). Myrick identified Exhibit N-3 and Exhibit N-4 in an August 1, 2012 letter to Allen. (*See* Doc. 12, Ex. A-C, Myrick Letter to Allen #2). Myrick notified Allen that the original recordings were transferred to another Agency, the Wood County Sherriff's Department, but that the DEA did locate a copy of Exhibit N-3. (*Id.*). The DEA did not locate any original audio or video recording in the case file or office evidence system through its search. (*See* Doc. 12, Ex. A, Myrick Decl. at ¶ 20). The DEA did not produce Exhibit N-3 pursuant to four enumerated exceptions in FOIA and an exemption in the Privacy Act. (*Id.* at ¶ 7).

On October 17, 2012, Plaintiff's counsel administratively appealed the decision to withhold Exhibit N-3 in a letter to Anne Work of the Department of Justice. (*See* Doc. 12, Ex. A-D, Allen Letter to Work). On April 30, 2013, Sean O'Neill, the Chief of the Administration Appeals Staff affirmed the decision to withhold Exhibit N-3. (*See* Doc. 12, Ex. A-F, O'Neill Letter to Allen). This lawsuit followed.

Although the DEA withheld or redacted other information, Plaintiff asserts that this case only concerns Exhibit N-3 and Exhibit N-4. The DEA asserts that it withheld all information properly under FOIA Exemptions 7(C), 7(D), 7(E), and 7(F). The DEA further argues that Plaintiff's Motion for Summary Judgment should be denied because Plaintiff filed his motion six weeks after the Dispositive Motion Deadline without Court approval. Plaintiff asks this Court to conduct an *in camera* review of these exhibits because he contends that the disclosure of Exhibit N-3 and Exhibit N-4 will expose a "cover up" by the government. Plaintiff also asks for leniency regarding the timeliness of his motion due to his *pro se* status and a prisoner.

## II.     STANDARD OF REVIEW

Both parties moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment.  *Id*. at 249-50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").  In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review.  *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions.").  Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III.  DISCUSSION

The parties have filed cross motions for summary judgment regarding Plaintiff's FOIA requests and the DEA's subsequent denials.  The DEA argues that it only has one of the two exhibits requested in its possession and that it properly withheld the exhibit pursuant to 5 U.S.C. § 552(b)(7).  Plaintiff claims that both exhibits should be released to him because one of the exhibits was played at his trial and because both exhibits contain information relating to him.

In order for subject matter jurisdiction to exist in a FOIA lawsuit, the Plaintiff must demonstrate three components: that the agency "(1) improperly (2) withheld (3) agency records." *Kissinger v. Reporters Comm. for Freedom of the Press* 445 U.S. 136, 150 (1980).  "Agency possession of the requested documents is 'an indispensable prerequisite to liability in a suit under the FOIA.'"  *Vonderheide v. IRS*, No. 98-4277, 1999 U.S. App. LEXIS 28518, *3, 9 (6th Cir. October 29, 1999) (quoting *Kissinger*, 445 U.S. at 155).

Once subject matter jurisdiction is established, the FOIA requires this Court to review the DEA's denial of Plaintiff's FOIA requests *de novo*.  5 U.S.C. § 552(a)(4)(B).  "In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information," and "the

burden is on the agency to establish the adequacy of its search." *Rugiero v. U.S. Dept. of Justice*, 257 F.3d 534, 547 (6th Cir. 2001) (citation omitted). Under the FOIA, "an agency may not withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies." *Id.* at 543 (citing 5 U.S.C. § 522(d)). "These exceptions are to be narrowly construed, and the burden is on the agency to justify its action." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)) (internal citations omitted).

A.  **Plaintiff's Claim Regarding Exhibit N-4 Lacks Subject Matter Jurisdiction**

Regarding Exhibit N-4, the DEA has presented evidence that it does not possess Exhibit N-4. (Doc. 12, Ex. A, Myrick Decl. ¶ 20; Doc. 12, Ex. A-C, Myrick Letter to Allen #2). Collectively, the Myrick Letter to Allen and the Myrick Declaration clearly show that although the DEA identified Exhibits N-3 and N-4 in its search, the DEA could only find a producible copy of Exhibit N-3. (*Id.* at ¶ 20.). The Myrick Declaration further states that the original audio and video recordings were turned over to the Wayne County Sheriff's Office and is supported by Myrick's letter to Plaintiff's counsel. (*Id.*; Doc. 12, Ex. A-C, Myrick Letter to Allen #2). Thus, there is no genuine issue of material fact that the DEA does not possess Exhibit N-4 in any form. Where the agency does not possess the requested information, there is no subject matter jurisdiction in this Court. *Vonderheide*, 1999 U.S. App. LEXIS at *3. Accordingly, Plaintiff's claims regarding Exhibit N-4 are dismissed for lack of subject matter jurisdiction.

B.  **Adequacy of the DEA's Search**

Plaintiff does adequately allege facts supporting subject matter jurisdiction regarding Exhibit N-3. Thus, the Court must determine if the search described by the DEA was adequate. *Rugiero*, 257 F.3d at 547. Provided there is no "countervailing evidence or apparent inconsistency of proof," the DEA may demonstrate the adequacy of the search through affidavits or declarations "that provide reasonable detail of the scope of the search." *Id.* (citation omitted).

8

The DEA provided the Declaration of Katherine Myrick to support the scope and mechanics of the search performed by the DEA.  Plaintiff's request was directed to SARF, the appropriate DEA office.  (Doc. 12, Ex. A, Myrick Decl. at ¶ 1).  Myrick properly construed Plaintiff's request as a request for any audio and/or video recordings made in May or June 2007. (*Id.* at ¶ 11).

SARF conducted a search for Plaintiff through the Narcotics and Dangerous Drugs Information System ("NADDIS").  (*Id.* at ¶ 18).  NADDIS is an index used by the DEA to retrieve investigative reports and information from the DEA Investigative Reporting and Filing System ("IRFS").  (*Id.* at ¶ 17).  IRFS contains all administrative, general, and criminal investigative files compiled by the DEA.  (*Id.* at ¶ 14).  The cases in NADDIS are indexed using the names, dates of birth, and social security numbers of the subject of an investigation.  (*Id.* at ¶ 18).  As a result of the NADDIS search using Plaintiff's name and date of birth, SARF found one investigative case file containing information regarding Plaintiff.  (*Id.* at ¶ 19).  SARF contacted the DEA field office that maintained the case file and asked the field office to search the file for information related to Plaintiff.  (*Id.*).  A disposition form noted that the DEA turned over the original audio and video recordings related to Plaintiff to the Wayne Count Sherriff's Office.  (*Id.* at ¶ 20).

Plaintiff has provided no countervailing evidence relating to the search procedure. Further, although Plaintiff does allege inconsistency in other portions of the Myrick Declaration, he does not allege—nor has the Court found—any inconsistency in Myrick's Declaration that would undermine the DEA's evidence regarding the adequacy of the search.  Accordingly, the Court finds that DEA has met its burden of proving the adequacy of its search.

9

C.	**The DEA's Claimed Exemptions**

The second question before the Court in these motions for summary judgment is whether the DEA appropriately withheld Exhibit N-3 pursuant to one of the FOIA's specific exemptions. The Court must make this determination by reviewing the declaration that justifies the withholding of documents and determining whether the justifications given are reasonable and consistent with the law governing application of FOIA's exemptions. *Rugiero*, 257 F.3d at 552. The Act's exemptions are narrowly construed. *Id.* at 543 (citations omitted). The agency has the burden of demonstrating that the materials sought were properly withheld or restricted due to an exemption. *Vaughn v. United States*, 936 F.2d 862, 866 (6th Cir. 1991) (citation omitted).

The DEA contends that Exhibit N-3 was withheld subject to 5 U.S.C. § 552(b)(7): records or information compiled for law enforcement purposes. Plaintiff does not challenge that the records requested were compiled for law enforcement purposes. This does not end the inquiry because only certain categories of records compiled for law enforcement purposes are exempt under the FOIA. Specifically, the DEA claims that Exemptions 7(C), 7(D), 7(E), and 7(F) apply to Exhibit N-3. Law enforcement records are only exempt under 5 U.S.C. § 552(b)(7)(C)–(F) if the records:

> (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy;
>
> (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source;
>
> (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law; or

>   (F) could reasonably be expected to endanger the life or physical safety of any individual;

5 U.S.C. § 552(b)(7).  Although the DEA claims that Exhibit N-3 falls under each of the four stated exemptions, a review of only Exemption 7(D) is necessary for the determination of this case.

Exception 7(D) applies when a requested document "could reasonably be expected to disclose the identity of a confidential source . . . which furnished information on a confidential basis, and . . . information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  Thus, a government agency can exclude a document under Exception 7(D) if it could reasonably be expected to disclose the identity of a confidential source OR if the document contains information furnished by a confidential source.  *Foster v. U.S. Dep't of Justice*, 933 F. Supp. 687, 692–93 (E.D. Mich. 1996).  Even if a confidential source is eventually revealed, public access to documents under this section is still restricted "so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information."  *Rugiero*, 257 F.3d at 551.  "[T]he agency must provide assurances that sources in fact received promises of confidentiality before withholding information under section 552(b)(7)(D)."  *Id.* at 552.  "This exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure."  *Jones v. F.B.I.*, 41 F.3d 238, 247 (6th Cir. 1994).  However, if a tape containing information subject to Exception 7(D) was played during an informant's testimony, the tape cannot be withheld.  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

There is no dispute that Exhibit N-3 contains information regarding a confidential source.  The Myrick Declaration notes that the DEA codes a confidential informant or source as a CI,

11

SOI, or CS. (Doc. 12, Ex. A, Myrick Decl. at ¶¶ 42, 44). The Declaration attests that such a source was identified in documents responsive to Plaintiff's request. (*Id.*). Additionally, in the Report of Investigation by Mark Apple, Apple reports the "Beowulf recorder was turned on and place[d] on the CS." (*See* Doc. 16, Ex. A, Report of Investigation at 131). As Myrick noted, "CS" is an identification code for a coded informant who is cooperating with the DEA under a written cooperative agreement. (Doc. 12, Ex. A, Myrick Decl. at ¶ 42). Thus, Exemption 7(D) applies in this case.

The Court finds no evidence that would serve to undermine the DEA's claim of Exemption 7(D). Plaintiff's two arguments against the claimed exemption do not remove the protections afforded to the DEA by Exemption 7(D). First, Plaintiff argues the tape should be produced because it was played at his trial. But Plaintiff alleges no facts demonstrating that Exhibit N-3 was ever played at his trial. All of his allegations and evidence clearly show that if any tape was played at his trial, it was Exhibit N-4 as recorded on the Falcon recorder. Notably, Plaintiff states that in response to a request for audio/video recordings, the Wood County Clerk of Courts, "responded [by] providing a copy of the Falcon video and audio recording introduced as evidence to the trial court and court of appeals in case No. 07-CR-0212 and 0215." (*See* Doc. 16, Pl. Mot. Sum. J. at 114). Plaintiff provides no evidence suggesting that Exhibit N-3 was played at his trial. Accordingly, Exemption 7(D) still applies to the production of Exhibit N-3.

Second, Plaintiff claims disclosure is necessary because information relating to him was captured on Exhibit N-3 and that the exhibit should thus be turned over by the DEA. But, regardless of whether the Beowulf Recorder or Exhibit N-3 captured information relating to Plaintiff, there is no question of material fact that Exhibit N-3 contains information provided by a confidential informant under 5 U.S.C. 522(b)(7)(D). Nor is there any evidence that Exhibit N-3

12

was played at Plaintiff's trial.  Accordingly, the Court finds that the DEA's withholding of Exhibit N-3 was proper under Exception 7(D).

## IV.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

The Clerk shall **REMOVE** Documents 12 and 16 from the Court's pending motions list. The Clerk shall enter final judgment in favor of Defendant and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

  __/s/ George C. Smith_____ ___
**GEORGE C. SMITH, JUDGE
UNITED STATES DISTRICT COURT**